1
2
3
4
5
6         IN THE UNITED STATES DISTRICT COURT
7            FOR THE DISTRICT OF ARIZONA
8

9   United States of America,              )   Nos. CV-12-1666-PHX-DGC (BSB)
                                            )        CR-10-0400-PHX-DGC
10              Plaintiff/Respondent,       )
                                            )   **REPORT AND RECOMMENDATION**
11   vs.                                    )
                                            )
12   Janice Sue Taylor,                     )
                                            )
13              Defendant/Movant.           )
                                            )
14   _____       )

15          Defendant-Movant Janice Sue Taylor (Defendant) has filed a pro se Motion to Vacate,

16   Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C § 2255

17   raising five grounds for relief.  (Doc. 1.)[1]  Defendant challenges the Court's jurisdiction and

18   venue, asserts that the government committed fraud by prosecuting her, and argues that she

19   received ineffective assistance of counsel.  The government has filed a response opposing

20   Defendant's motion to which Defendant has replied.[2]  (Docs. 8 and 14.)  For the reasons below,

21   Defendant's § 2255 motion should be denied.

22   _____

23          [1] Citations to "Doc." refer to the docket in CV-12-1666-PHX-DGC (BSB).  Citations
24   to "CR Doc." refer to the docket in CR-10-0400-DGC.

25          [2] On March 14, 2013, Defendant filed a "Rebuttal to Response from Government
26   Respondents on Habeas Corpus."  (Doc. 13.)  On March 25, 2013, she filed another "rebuttal"
     clarifying that "[t]his rebuttal to Government Respondents' Response on Habeas Corpus is
27   being re-entered to correct the errors and the omitted Exhibit "B".  Please discard the doc. 13
     with the wrong Exhibit B."  (Doc. 14 at 1.)  The Court considers the March 25, 2013 filing an
28   amended reply that supersedes the earlier filed reply.

**I.      Procedural and Factual History**

On March 30, 2010, a federal grand jury indicted Defendant on four counts of tax evasion, in violation of 26 U.S.C. § 7201, for tax years 2003 through 2006, and four counts of willfully failing to file tax returns, in violation of 26 U.S.C. § 7203, for the same tax years. (CR Doc. 1.)   The indictment alleged that Defendant attempted to conceal her income from the Internal Revenue Service (IRS) and evade taxes by, among other methods: (1) failing to report her income to the IRS; (2) concealing income through her real estate brokerage, National Land Bank LLC; (3) concealing her ownership interests in, and profits from, real estate transactions through the use of sham trusts; and (4) using cash, cashier's checks, and nominee entities to hide her income and assets. (*Id.*)

Before trial, Defendant moved to terminate her attorney and represent herself.  (CR Doc. 61.) On September 1, 2010, the Court granted the request but directed the assigned federal public defender to remain on the case as advisory counsel.  (CR Doc. 78.)  The trial began on April 19, 2011. (CR. Doc. 248.)

At trial, Janice Weaver, a former employee of Sunstate Bank in Casa Grande, Arizona, testified regarding Defendant's attempts to structure her financial transactions to avoid bank reporting requirements, and her seemingly false assertions that she did not have a social security number and or a driver's license.  (RT 4/26/11 826-827, 829)[3] Additionally, IRS revenue agent Cheryl Bradley testified about Defendant's false statements during an audit for tax year 2001. (RT 4/20/11 351-53.)  IRS revenue officer Jerry Carter testified that Defendant had buried her assets to avoid IRS collection efforts.  (RT 4/26/11 413-19.)[4]  Defendant's ex-boyfriend also testified that he and Defendant attended a seminar in the Caribbean during which the speaker joked about burying  assets.  (RT 4/20/11 401-02.)  The jury found Defendant guilty on all counts after a six-day trial.  (CR Doc. 256.)

---

[3]  Citations to RT 4/26/11 are to April 26, 2011 trial transcript located at CR Doc. 282.

[4]  Citations to RT 4/20/2011 are to the April 20, 2011 transcript located at CR Doc. 280.

1    Shortly before her December 5, 2011 sentencing, Defendant filed a notice that she was

2    terminating her advisory counsel, and advisory counsel filed a separate motion to withdraw.

3    (CR Docs. 296, 297.)   After a hearing, the Court granted advisory counsel's motion to

4    withdraw.  (CR Doc. 302.)

5    At sentencing, the Court found that Defendant "actively avoided the payment of taxes

6    since the late 1990s" and that through a "major, calculated effort . . . to hide significant amounts

7    of money" Defendant ultimately evaded more than $3 million in federal and state taxes. (RT

8    12/1/2011 27-28.)[5]  The Court applied a "sophisticated means" sentencing enhancement based

9    on Defendant's extensive use of sham trusts and other fictitious entities:

> I will note that the comment to guideline section 2T1.1 defines sophisticated
> means as especially complex or especially intricate offense conduct
> pertaining to the execution or concealment of an offense. It goes on to say
> that conduct such as hiding assets or transactions or both through the use of
> fictitious assets, corporate shells, or offshore financial accounts ordinarily
> indicates sophisticated means.  In this case there was significant evidence
> during the trial of the use of fictitious entities for purposes of hiding assets,
> and so it's my conclusion that the sophisticated means enhancement is
> warranted[.]

15   (RT 12/5/2011 12-13.)

16   The Court also found that Defendant obstructed justice:

> Based on the evidence that I heard during the trial, it is clear to me that the
> defendant did interfere with IRS attempts to procure documents and
> records. She submitted false 1099 forms with her income tax returns; she
> lied to the revenue agent when questioned about assets; and she did submit
> a fraudulent financial affidavit on CJA Form 23.  So my conclusion is that
> two levels should be added as in paragraph 20 [of the PSR] because the
> defendant did willfully obstruct or impede or attempt to obstruct or impede
> the administration of justice.

22   (RT 12/5/2011 14.)

23   The Court sentenced Defendant to seventy-eight months' imprisonment to be followed

24   by three years of supervised release.  (CR Doc. 310, 311, 312, 314.)  Defendant did not file a

25   direct appeal.  She filed the pending § 2255 motion on August 6, 2012.

26   _____

27   [5] Although the docket reflects that Defendant was sentenced on December 5, 2011 (CR
     Doc. 310), the transcript is dated December 1, 2011.  (CR Doc. 312.)  Therefore, the Court
28   refers to the transcript as RT 12/5/11.

1  **III.      Analysis of Defendant's Claims**

2           In Ground One of her § 2255 motion, Defendant asserts that Public Law 80-772 and

3  18 U.S.C. § 3231 were never validly enacted, thus rendering her convictions null.  In Ground

4  Two, Defendant asserts that the government committed a fraud by prosecuting her despite the

5  lack of valid subject matter jurisdiction.  In Ground Three, she alleges that the government

6  failed to establish that she committed her offenses in Arizona, which she claims is an essential

7  element of the offenses.  In Ground Four, Defendant asserts that the Court lacked authority to

8  "prosecute" her under Article III of the Constitution because the Court "transferred into the

9  Department of Justice as part of the Emergency Powers and in violation of the Separation of

10  Powers Doctrine." (Doc. 1 at 9.)  In Ground Five, Defendant asserts that defense counsel

11  rendered ineffective assistance in violation of the Sixth Amendment by failing to investigate the

12  Court's jurisdiction and the legal basis for the indictment and conviction.[6]  Defendant's motion

13  is timely because it was filed within one year after the Court imposed her sentence.  *See* 28

14  U.S.C. § 2255(f)(1).  As set forth below, however, the Court finds that Defendant's arguments

15  lack merit and recommends that her § 2255 motion be denied.[7]

16          **A.  Standard of Review**

17          Under § 2255, a person in custody may "move the court which imposed the sentence

18  to vacate, set aside or correct the sentence" on the grounds that "the sentence was imposed in

19  violation of the Constitution or laws of the United States, or that the court was without

20  jurisdiction to impose such sentence, or that the sentence was in excess of the maximum

21  _____

22          [6]  The list of issues on pages 8-9 of Defendant's motion does not match the arguments
     in her argument section.  The Court addresses the issues in the sequence previously identified
23  in its November 13, 2012 Order.  (Doc. 3.)

24          [7]  As an initial matter, Defendant challenges the authority of a magistrate judge to
25  consider her § 2255 motion and requests assignment to an Article III judge.  (Doc. 1; Doc. 14
     at 2.)  Defendant previously filed a separate motion raising this same issue, which the Court
26  denied.  (Docs. 6 and 10.)  The Court addresses this issue only to reiterate that this matter is
     assigned   to a district judge and is referred to this magistrate judge for a report and
27  recommendation.  Thus, an Article III judge will make the final determination on Defendant's
28  § 2255 motion.  *See* 28 U.S.C. § 636(b)(1)(B), LRCiv 3.7e.

authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. *Id.* Thus, to prevail, Defendant must demonstrate that her sentence was imposed in violation of the United States Constitution or federal law.

A court that receives a motion filed under § 2255 "must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and files and records of the case conclusively show that the petitioner is entitled to no relief.'" *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255). Here, because the record conclusively shows that Defendant is not entitled to relief, the Court need not hold an evidentiary hearing. *See id.*

## B. Ground One — Validity of 18 U.S.C. § 3231 and the Tax Code

In Ground One, Defendant asserts that her convictions are null because Public Law 80-772 and 18 U.S.C. § 3231 were never validly enacted. Title 18 U.S.C. § 3231 provides that "the district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." *Id.* The indictment alleges violations of 26 U.S.C. §§ 7201 and 7203, which are tax offenses against the United States. Thus, under § 3231, the Court had jurisdiction over the underlying criminal case.

Defendant argues that 18 U.S.C. § 3121 is unconstitutional because the underlying legislation "died upon adjournment *sine die*" and the enrolled bill was signed without a quorum present. (Doc. 1 at 2, 8, 38-61; Doc. 14 at 9-11.) Numerous courts have considered and rejected similar arguments. *See e.g., United States v. Collins*, 510 F.3d 697, 698 (7th Cir. 2007) (summarily rejecting as "unbelievably frivolous" the argument that the federal criminal code was unconstitutional due to irregularities in its enactment"); *United States v. Levy*, 849 F. Supp. 2d 1353, 1354-57 (S.D. Fla. 2012) (stating that arguments that Title 18, including § 3231, was not constitutionally enacted "have been squarely rejected by all the federal courts to have considered them" and listing cases); *Cardenas-Celestino v. United States*, 552 F. Supp. 2d 962, 966-968 (W.D. Mo. 2008) (stating that these arguments that the federal criminal code was not constitutionally enacted are "part of a new rash of frivolous claims raised by prisoners across

the country, many of whom have copied the arguments directly from Internet Websites" and listing cases).

Moreover, the "enrolled bill" rule would prevent Defendant from obtaining post-conviction relief based on alleged irregularities in enacting § 3231. *See Marshall Field & Co. v. Clark*, 143 US. 649 (1892) (rejecting argument that a bill that passed both House of Congress was not the bill actually voted on and explaining that the "signing by the speaker of the house of representatives, and by the president of the senate, in open session, of an enrolled bill, is an official attestation by the two houses of such bill as one that passed congress."); *United States v. Miles*, 244 Fed. Appx. 31, 33 (7th Cir. 2007) (relying on the enrolled bill rule to reject challenge to validity of § 3231); *Levy*, 849 F. Supp. 2d at 1355-56 (same); *United States v. Chillemi*, 2007 WL 2995726 at *7 (D. Ariz. Oct. 12, 2007) (same).

In Ground One, Defendant also argues that Title 26 of the United States Code, the tax code, is invalid because there are no implementing regulations. (Doc. 1 at 62-64.)  Thus, she argues that she cannot be charged under the federal criminal code, Title 18, for tax evasion. This argument also lacks merit. Tax evasion in violation of 18 U.S.C. § 7201 is a crime and implementing regulations are not required to enforce the statute. *See United States v. Hicks*, 947 F.2d 1356, 1360 (9th Cir. 1991) ("It is the tax code itself, without reference to regulations, that imposes the duty to file a tax return."); *United States v. Bowers*, 920 F.2d 220, 222 (4th Cir. 1990) ("[T]he [defendants] simply have evaded income taxes, and their duty to pay those taxes is manifest on the face of the statutes, without any resort to IRS rules, forms, or regulations."). "The Internal Revenue Code fully defines the criminal conduct it prohibits and therefore does not contemplate that regulations will be promulgated to define further substantive obligations beyond those created by the Code." *United States v. Washington*, 947 F. Supp. 87, 91 (S.D.N.Y. 1996).

The cases Defendant cites are distinguishable because they involved statutes that did not fully define the criminal acts and that contemplated implementing regulations. *See Cal. Bankers Ass'n v. Schultz*, 416 U.S. 21 (1974) (upholding Bank Secrecy Act of 1970 against various constitutional challenges); *United States v. Mersky*, 361 U.S. 431 (1960) (affirming

1  dismissal of criminal charge under Tariff Act regulations because conduct did not violate
2  regulations); *Hotch v. United States*, 212 F.2d 280 (9th Cir. 1954) (reversing conviction for
3  fishing in violation of Department of Interior regulation because regulation had not been
4  published in Federal Register); *see also Washington*, 947 F. Supp. at 91 (holding that 26 U.S.C.
5  § 7201 is enforceable without implementing regulations and distinguishing *Schultz* and *Mersky*).
6  Therefore, Defendant's arguments challenging the validity of the federal criminal code and the
7  tax code should be rejected.

8  ### C.  Ground Two — Fraudulent Prosecution

9      In Ground Two, Defendant asserts that the United States committed fraud by
10 prosecuting her despite knowing that 18 U.S.C. § 3231 and 26 U.S.C. § 7201 are invalid.
11 (Doc. 1 at 64-67, Doc. 14.)  As discussed above, Defendant's challenge to the validity of these
12 statutes lacks merit.  Thus, her contention that she was fraudulently prosecuted under those
13 allegedly invalid statutes also lacks merit and should be rejected.

14 ### D.  Ground Three — Venue

15     In  Ground Three, Defendant alleges that the government failed to establish that she
16 committed the offenses in Arizona, which she claims is an essential element of the offenses of
17 conviction.  (Doc. 1 at 67-75.)  Generally, "the government must prosecute an offense in the
18 district where the offense was committed."  Fed. R. Crim. P. 18.

19     Here, the government charged Defendant with several counts of tax evasion. Tax
20 evasion is a "continuing offense" within the meaning of 18 U.S.C. § 3237(a).  *United States v.*
21 *Marchant*, 774 F.2d 888, 891 (8th Cir. 1985) (listing cases); *United States v. Slutsky*, 487 F.2d
22 832, 839 (2d Cir. 1973).  Thus, the government can prosecute, and venue is proper, in any
23 district in which any act in furtherance of the crime was committed, including the district in
24 which a return was prepared, signed, mailed, or filed.  *Marchant*, 774 F.2d at 891; *Slutsky*, 487
25 F.2d at 839.  In cases in which no return was filed, venue is proper in any district in which an
26 affirmative act of evasion took place.  *United States v. Goodyear*, 649 F.2d 226, 228 (4th Cir.
27 1981).  Although the government must prove venue by a preponderance of the evidence, it is
28 not an element of the charged offense.  *See United States v. Casch*, 448 F.3d 1115, 1117 (9th

1  Cir. 2006) (venue is not an element of the charged crime); *United States v. Angotti*, 105 F.3d
2  539, 541 (9th Cir. 1997) (the prosecution bears the burden of establishing venue by a
3  preponderance of the evidence).

4        Defendant was tried in Arizona, which "constitutes one judicial district."
5  28 U.S.C. § 82.  The government presented evidence at trial that Defendant committed the
6  charged crimes in the District of Arizona.  Defendant committed numerous affirmative acts of
7  evasion in the District of Arizona, including: (1) owning and operating an Arizona real estate
8  brokerage, National Land Bank, that was used to hide her earnings (Doc. 8, Ex. 101); (2) using
9  Arizona banks and escrow offices to conceal income through sham trusts and cashier's checks
10 (RT 4/21/2011 614-16 (sham trusts), 607-09 (cashier's checks); (3) lying to a bank employee
11 and IRS revenue agent in Arizona (RT 4/26/11 820, 827, 835 (bank employee), RT 4/20/11
12 351-53 (IRS revenue agent)); and (4) mailing false tax returns from an Arizona address (Doc. 8,
13 Ex. 102).

14        Moreover, Defendant cannot challenge venue in a post-conviction relief motion
15 because she did not pursue a direct appeal.  "[T]he general rule [is] that claims not raised on
16 direct appeal may not be raised on collateral review unless the petitioner shows cause and
17 prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003).  Some claims, such as claims
18 of ineffective assistance of counsel and jurisdictional challenges, may be raised for the first time
19 on collateral review.  *See id.*  However, Defendant cannot challenge the sufficiency of the
20 evidence supporting venue for the first time in a § 2255 motion.  *See Gourneaeu v. United*
21 *States*, 390 F.2d 320, 321 (8th Cir. 1968) (finding challenge to venue waived because it was not
22 raised prior to movant's § 2255 motion); *Marcella v. United States*, 344 F.2d 876, 882 (9th Cir.
23 1965) (same).  Therefore, Defendant's challenge to venue should be rejected.

24        **E.  Ground Four — The District Court's Jurisdiction To Hear Criminal Cases.**
25        Defendant also argues that this Court lacks authority to decide criminal cases because
26 it is not an Article III court. (Doc. 1 at 77.)  Defendant raised a similar claim the first day of trial
27 and the Court summarily rejected it.  (RT 4/19/2011 21-25.)  In her motion, Defendant argues
28 that the United States criminal code only applies to the District of Columbia, Puerto Rico, and

- 8 -

1   various territories, and she suggests that this Court has committed treason by considering

2   criminal cases in violation of the Constitution.  (Doc. 1 at 77-78.)

3          This Court has jurisdiction to decide federal criminal cases pursuant to 18 U.S.C.

4   § 3231.  Defendant had not cited any authority to support her argument that the Court lacks

5   jurisdiction over federal criminal cases.  Defendant has previously challenged this Court's

6   jurisdiction in other matters and this Court has rejected her claims.  *See United States v. Taylor*,

7   CV-06-3121-PHX-SRB (Doc. 155 at 5-6, Docs. 179, 182, and 187.); and *Taylor v. Cody*, CV-

8   07-2095-PHX-DGC (Doc. 7).[8] Defendant's challenge to the Court's jurisdiction to hear criminal

9   cases should be rejected.

### F.  Ground Five — Ineffective Assistance of Counsel

11         Defendant further claims that she received ineffective assistance of counsel.  She

12  argues that "counsel rendered ineffective assistance during pre-trial [proceedings], trial, and

13  appeal because she failed to investigate the facts and law related to the district court's

14  jurisdiction under Title 18 and 18 U.S.C. § 3231, Title 21, the drug statutes, the States of

15  Emergency, the Separation of Powers Doctrine, and failed to investigate the validity of

16  Petitioner's indictment."  (Doc. 1 at 78-80.)

17         To establish ineffective assistance of counsel resulting in a Sixth Amendment

18  violation, a petitioner must establish that: (1) counsel's representation fell below an objective

19  standard of reasonableness; and (2) she was prejudiced as a result of counsel's deficient

20  performance.  *Strickland v. Washington*, 466 U.S.  668, 688-692 (1984).  To be deficient,

21  counsel's performance must fall "outside the wide range of professionally competent

22  assistance."  *Id.* at 690.  When reviewing counsel's performance, the court applies a strong

23  presumption that counsel rendered adequate assistance and exercised reasonable professional

24  judgment.  *Id.*  "A fair assessment of attorney performance requires that every effort be made

25  to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

---

27         [8] Although Defendant also challenged the Court's jurisdiction in *Taylor v. Bolton*, 07-
28  1775-DGC (DKD), she voluntarily withdrew her complaint and the Court dismissed the case
    without considering Defendant's jurisdictional challenge.  (Doc. 6.)

1    challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

2    at 689.  Review of counsel's performance is "extremely limited."  *Coleman v. Calderon*, 150

3    F.3d 1105, 1113 (9th Cir. 1998), *rev'd on other grounds*, 525 U.S. 141 (1998).  It is "all too

4    tempting" to "second-guess counsel's assistance after conviction or adverse sentence."

5    *Strickland*, 466 U.S. at 689.  "The question is whether an attorney's representation amounted

6    to incompetence under 'prevailing professional norms,' not whether it deviated from best

7    practices or most common custom."  *Harrington v. Richter*, ___ U.S.___, 131 S. Ct. 770, 788

8    (2011) (quoting *Strickland*, 466 U.S. at 690).

9           A petitioner must also establish that he suffered prejudice as a result of counsel's

10   deficient performance.  *Strickland*, 466 U.S. at 691-92.  To show prejudice, petitioner must

11   demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result

12   of the proceeding would have been different.  A reasonable probability is a probability sufficient

13   to undermine confidence in the outcome."  466 U.S. at 694.  It is not enough "to show that the

14   errors had some conceivable effect on the outcome of the proceeding."  *Id.* at 693.  Counsel's

15   errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is

16   reliable."  *Id.* at 687.  "'Surmounting *Strickland's* high bar is never an easy task.'"  *Richter*, 131

17   S. Ct. at 788 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473,1485 (2010)).  As

18   discussed below, Defendant's claims of ineffective assistance of counsel fail.

19          Defendant was represented by counsel from the Federal Public Defender's Office until

20   one week before trial when she terminated public defender Susan Anderson and the Court

21   permitted Anderson to withdraw as counsel.  Defendant represented herself at trial, with

22   Anderson acting as advisory counsel. (CR Doc. 302.)  Before sentencing, Defendant terminated

23   Anderson in her advisory capacity and represented herself.

24          To the extent that Defendant asserts that Anderson provided ineffective assistance of

25   counsel, her claim fails.  Defendant alleges that Anderson "failed to investigate the validity of

26   [the] indictment or to pursue a request for an evidentiary hearing on such matter, or file a [Fed.

27   R. Crim. P.] 12(b)(3) motion for dismissal pre-trial or a motion for dismissal."  (Doc. 1 at 80.)

28   However, Defendant has not shown how such allegedly deficient performance resulted in

1   prejudice.  Defendant's conclusory assertions that "had counsel preserved Petitioner's rights,"

2   she would not have been convicted and would not be illegally imprisoned, are not sufficient to

3   establish prejudice.  *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("[c]onclusory

4   allegations which are not supported by a statement of specific facts do not warrant habeas

5   relief"); *United States v. Smith*, 924 F.2d 889, 896 (9th Cir. 1991) ("[U]nsupported and

6   conclusory claims are not sufficient to show error"); *Cooks v. Spalding*, 660 F.2d 738, 740 (9th

7   Cir.1981) (per curiam) (mere speculation insufficient to demonstrate prejudice).  Accordingly,

8   Defendant has not shown that Anderson was ineffective under *Strickland*, 466 U.S. at 687-88

9   (1984) (requiring showing of deficient performance and prejudice).

10          Moreover, Defendant chose to represent herself at trial and sentencing and she did not

11  file an appeal.  Thus, any deficient performance during those stages of the criminal proceeding

12  was attributable to Defendant and is not a basis for § 2255 relief.  Because Defendant

13  represented herself at trial and at sentencing, and did not file a direct appeal, she cannot obtain

14  § 2255 relief on the basis of ineffective assistance of counsel during those proceedings.  *See*

15  *Savage v. Estelle*, 924 F.2d 1459, 1466 (9th Cir.1990) ( "[A] defendant who elects to represent

16  himself cannot thereafter complain that the quality of his own defense amounted to a denial of

17  'effective assistance of counsel.'") (quoting *Faretta v. California*, 422 U.S. 806, 834-35 n.46

18  (1975)); *see also United States v. Johnson*, 610 F.3d 1138, 1140 (9th Cir.  2010) (holding that

19  district court did not err in allowing defendants to represent themselves at trial and "assert an

20  absurd legal theory wrapped up in Uniform Commercial Code gibberish . . . . Under both

21  *Faretta* and *Edwards*, they had the right to represent themselves and go down in flames if they

22  wished, a right the district court was required to respect.").[9]

23  **IV.      Defendant's Supplemental Filings**

24          On December 18, 2012, after filing her § 2255 motion but before the government filed

25  its response, Defendant filed a thirty-one page "Supplement and Memorandum of Law in

26  _____

27          [9] Under *Faretta v. California*, 422 U.S. 806, 820-21 (1975) a criminal defendant is
    constitutionally entitled to waive his Sixth Amendment right to counsel and to represent
28  himself.

1  Support of Motion to Dismiss Case Pursuant to 28 U.S.C. § 2255." (Doc. 7.)  The government

2  did not address Defendant's Supplement in its response. (Doc. 8 at 2.)  Defendant's Supplement

3  does not include any new claims.  Rather, Defendant uses this Supplement to discuss federal

4  income taxes related to employment, quote various provisions of the Internal Revenue Code,

5  discuss rules of statutory construction and the constitutionality of taxation, and to discuss

6  5 U.S.C. § 4502, which Defendant refers to as the "IRS Imprest Fund Account."  (Doc. 7.)

7       The Rules Governing Section 2255 Proceedings do not provide for supplements to

8  Section 2255 motions.  Rather, those rules contemplate a motion, and, if ordered by the court,

9  a response, to which the moving party may reply.  *See* Rules 2 and 5, Rules Governing Section

10  2255 Proceedings.  However, because Rule 12 of these rules provides that the Federal Rules of

11  Civil Procedure are applicable "to the extent that they are not inconsistent with any statutory

12  provisions or these rules . . . ," the Court looks to Federal Rule of Civil Procedure 15 governing

13  supplemental pleadings.  Rule 15(d) provides that "on motion and reasonable notice, the court

14  may, on just terms, permit a party to serve a supplemental pleading setting forth any transaction,

15  occurrence, or event that happened after the date of the pleading to be supplemented."  Fed. R.

16  Civ. P. 15(d).

17       Although Defendant did not file a motion to supplement her § 2255 motion, the

18  Court's docket reflects that the Supplement was filed, rather than lodged.  The Supplement

19  discusses issues related to taxation and statutory construction and does not specifically address

20  the claim raised in the § 2255 motion.  It does not set forth "any transaction, occurrence, or

21  event" that happened after she filed her § 2255 motion, and thus was not properly filed as a

22  supplemental pleading.  *Id.*  The Court will not require a response to the Supplement because

23  it does not add any new claims or arguments to which a response is required.  Although

24  Defendant's characterization of 5 U.S.C. § 4502 as the "IRS Imprest Fund Account" (Doc. 7

25  at 24-28) suggests an allegation of bribery — that government officials are rewarded for

26  assisting with IRS prosecutions — she does not make that claim against the government in this

27  case.  Moreover, § 4502 does not establish an imprest fund, which is a "sum kept on hand,

28  periodically replenished, and used for small expenditures."   Merriam-Webster Online,

- 12 -

http://www.merriam-webster.com/dictionary (last visited Aug. 6, 2013). Rather, it provides a framework for giving cash awards to government employees for their "invention, superior accomplishment, or other meritorious effort for which the award is proposed is highly exceptional and unusually outstanding." 5 U.S.C. § 4502(b).

In addition, after the government responded to Defendant's 2255 motion (Doc. 8), Defendant filed an "Addendum to Habeas Corpus 2255 Supplement" on January 11, 2013. (Doc. 9.) The rules do not provide for addenda to § 2255 motions. *See* Rules 2 and 5, Rules Governing Section 2255 Proceedings. However, as set forth above, the Court applies Rule 15 of the Federal Rules of Civil Procedure to Defendant's Addendum. As with her Supplement, Defendant did not seek leave to supplement her § 2255 motion with an addendum. The Addendum does not set forth any "transaction, occurrence, or event," that she could not have included in her original § 2255 motion. Rather, the Addendum consists almost entirely of discussions of federal taxation (Doc. 9 at 4-9), rules of statutory construction (*Id.* at 9-13), "Federal Constitutional Taxation" (*Id.* at 13-15), and "Federal Taxation with Respect to Employment." (*Id.* at 16-25.) This lengthy discussion of tax law and history does not articulate any viable claim against the government.

Defendant, however, also asserts in her Addendum that the indictment was invalid. (Doc. 9 at 3-4, 26.) This is the only claim asserted in the Addendum and it does not warrant relief. Defendant contends that the indictment, judgment, and commitment order "lack foundation" because she was not engaged in employment and did not receive any "remuneration" during the tax years 2003 to 2006. (Doc. 9 at 4, 9, 26.) Thus, Defendant essentially challenges the sufficiency of the evidence.

Because Defendant did not file a direct appeal, she cannot challenge the sufficiency of the evidence in this § 2255 motion. *See Massaro,* 538 U.S. at 504. The appropriate vehicle for such an argument is a direct appeal, and not a § 2255 motion. *See Brule v. United States*, 240 F.2d 589, 589 (9th Cir.1957) (holding that a sufficiency of the evidence should be argued on direct appeal, and that "[a] motion under Section 2255, and an appeal therefrom, cannot be

1    used to raise [a sufficiency of the evidence] issue."). Therefore, Defendant's Addendum was
2    not properly filed as a supplement.

3           Finally, on August 2, 2013, Defendant filed a "Renewed Motion to Dismiss
4    Indictment Based on Lack of Jurisdiction." (Doc. 17.) Defendant asks for expedited release,
5    again arguing that Public Law 80-772 and 18 U.S.C. § 3231 were never validly enacted. She
6    also reiterates her challenge to the authority of a magistrate judge to consider her § 2255 motion.
7    For the reasons set forth in Section III.B above and in the Court's prior orders denying
8    Defendant's challenges to the magistrate judge's authority (Docs. 6 and 10), the Renewed
9    Motion to Dismiss Indictment should be denied.

10   **V.      Conclusion**

11          Defendant is not entitled to relief and her § 2255 motion should be denied.
12   Accordingly,

13          **IT IS RECOMMENDED** that Defendant's Motion to Vacate, Set Aside, or Correct
14   Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 (Doc. 1) be **DENIED**.

15          **IT IS FURTHER RECOMMENDED** that Defendant's Renewed Motion to
16   Dismiss Indictment (Doc. 17) be **DENIED**.

17          **IT IS FURTHER RECOMMENDED** that a certificate of appealability and leave
18   to proceed in forma pauperis on appeal be denied because Defendant has not made a substantial
19   showing of the denial of a constitutional right.

20          This recommendation is not an order that is immediately appealable to the Ninth
21   Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not
22   be filed until entry of the District Court's judgment. The parties shall have fourteen days from
23   the date of service of a copy of this recommendation within which to file specific written
24   objections with the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. Thereafter, the
25   parties have fourteen days within which to file a response to the objections. Failure to file
26   timely objections to the Magistrate Judge's Report and Recommendation may result in the
27   acceptance of the Report and Recommendation by the District Court without further review.
28   *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely

objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  *See* Fed. R. Civ. P. 72.

DATED this 6th day of August, 2013.

Bridget S. Bade
United States Magistrate Judge